

# Victim Impact Statement of Sumul Shah

1. I am the former President of Lumus Construction, Inc. ("Lumus"), a Massachusetts Corporation specializing in the construction of government facilities and renewable energy facilities, including wind energy plants.

   1.1. In 2009, Lumus began working with Sinovel Wind Group Co. ("Sinovel") for the purposes of entering into an agreement to purchase, commission, and maintain a wind turbine for a project in Charlestown, Massachusetts for the Massachusetts Water Resources Authority ("Charlestown Wind"). In 2010, Lumus entered into an agreement with Sinovel for the Charlestown Wind turbine. This turbine was delivered in 2011, and commissioned later that year in October, 2011.

   1.2. Maintenance Issues

      1.2.1. Lumus signed a Maintenance Services Agreement with Sinovel in June 2011. The agreement required Sinovel to maintain the Charlestown Wind turbine for a period of two years after commissioning (through October 2013). As a result of the US v. Sinovel case, Sinovel stopped performing work in June 2013.

      1.2.2. In order to complete its contractual obligation with its customer, Lumus hired Gemini Energy Services ("Gemini") to complete the maintenance obligations that Sinovel did not perform. The cost to Lumus for this issue in 2013 was $77,879.76.

   1.3. Foundation Issues

      1.3.1. In January 2012, the Charlestown Wind project experienced an extreme failure in the turbine foundation, which settled by approximately 2.5 inches. After extensive research and engineering, Lumus and its engineers developed a foundation repair plan. The foundation repair was completed in August 2012. The cost to Lumus for this issue in 2012 was $705,021.85.

      1.3.2. At around the same time that Lumus was working through this foundation issue at the Charlestown Wind project, Lumus was contacted by the Department of Justice and the Federal Bureau of Investigation regarding intellectual property issues inside the Charlestown Wind turbine. In the midst of the foundation investigation, Lumus also provided assistance to the FBI in support of their investigation.

      1.3.3. The likely cause of the foundation failure was that the turbine performed outside of the engineering limits of the foundation. The records indicate that the turbine experienced excessive vibration in December 2011 and January 2012. The excessive vibration created forces beyond what the foundation was designed for.

      1.3.4. As a result of the US v. Sinovel case, Sinovel withdrew from having a US presence in 2013. The withdrawal of Sinovel prevented Lumus from pursuing collections of the amounts due resulting from the foundation failures.

2. I am currently the President of Solaya Energy LLC ("Solaya"), a Delaware Corporation specializing in the development of wind energy facilities as well as consulting for the construction industry.

   2.1. Solaya Energy is a member of Scituate Wind LLC ("Scituate Wind"), a single purpose entity that owns a wind turbine in Scituate, Massachusetts. In 2011, Scituate Wind purchased one wind turbine for installation at the Scituate Wind project site. This turbine was commissioned in April 2012.

   2.2. Solaya Energy is a member of Fairhaven Wind LLC ("Fairhaven Wind"), a single purpose entity that owns a wind turbine in Fairhaven, Massachusetts. In 2011, Fairhaven Wind purchased two wind turbines for installation at the Fairhaven Wind project site. This turbine was commissioned in May 2012.

   2.3. For both Scituate Wind and Fairhaven Wind, Sinovel was obligated to provide maintenance services for five years after commissioning. Sinovel was also responsible for ensuring that the turbine was available to operate approximately 95% of the time.

   2.4. As a result of the US v. Sinovel case, Sinovel stopped performing work in June 2013. Initially Sinovel hired Gemini to perform its maintenance obligations as a subcontractor to Sinovel. This arrangement did not last as ultimately the project companies directly hired Gemini to take over the maintenance duties from Sinovel. As a result of the US v. Sinovel case, Sinovel breached its contract with each of the project companies.

   2.5. The project companies suffered losses due to having to pay higher prices for third party maintenance services. Also, since typically only the original equipment manufacturers ("OEM") are able to guarantee their own products, the project companies also suffered losses because the turbine equipment did not perform with the availability that was guaranteed by Sinovel. Finally, typically OEMs provide a higher quality of service than third party maintenance providers. The lack of service by the OEM is likely to have caused significant degradation in the life span of the turbine, which also has a significant impact to the project companies.

   2.6. The actual cost impact to the project companies will be calculated by the manager for the project companies, Palmer Management Corporation ("PMC"). Solaya's losses are a portion of the total losses suffered by the project companies.

3. The Department of Justice has termed this indictment a case of "attempted corporate homicide." Unfortunately for Lumus, the Consequential Damages from its involvement with Sinovel have resulted in actual corporate homicide. The Sinovel issues above sparked a downward spiral of issues from which Lumus was never able to recover.

   3.1. As a result of the losses encountered above, the Surety for Lumus assumed control over Lumus' operations. Once the Surety took over operations, Lumus was unable to pursue any new work since all of Lumus work required bonding support from a Surety. Without

the ability to get new work, Lumus' bank issued a demand notice to collect on its outstanding line of credit. In 2013, Lumus defaulted on its loan of $1,351,772.60. In November 2013, Lumus ceased operations.

3.2. As a result of the losses encountered above, when the Surety assumed control over Lumus' operations as indicated above, it prevented Lumus from obtaining new work. As a result, Lumus did not have adequate capital to fund the obligations for which the Surety assumed control over. In addition to the amounts funded for the Charlestown Wind foundation fix and the Charlestown Wind maintenance obligations, the Surety funded $1,049,332.74 in corporate obligations to wind down the company. Lumus is liable for these amounts spent by the Surety.

3.3. The Sinovel matters impacted more than just Lumus. Prior to its involvement with Sinovel, Lumus and Solaya had over 130 employees of whom many had a 30-year history working with my family. Today Lumus has been closed down and I am the sole employee of Solaya. The loss of these jobs has had a devastating impact on many, many families.

4. My involvement with Sinovel has had a tremendous impact on me personally. I take enormous pride in having built a great company from scratch starting in 1998. Over a 15-year period, the company grew from 1 employee to over 220 employees at one time. The company performed work that was important for our national interests including work for the Department of Defense, Department of Homeland Security, US Coast Guard, Veterans Administration, National Park Service, and other government agencies. The company fundamentally changed the economics of renewable energy projects, making these projects competitive with traditional energy facilities. The company won numerous awards for quality of work, safety and federal government contracting. In 2009, President Obama awarded Lumus an award for Small Business of the Year for Massachusetts and first runner up nationally. The loss of such a great business has been a strain for me professionally and also for my family.

4.1. Aside from my personal sense of accomplishment with Lumus, all of the Lumus damages listed above flow to me personally. My wife and I are personal guarantors to the bank, for which there is a judgment against us in the amount of $1,351,772.60. My wife and I are also personal guarantors to the Surety for which $1,832,234.35 is due. In addition, my wife and I loaned Lumus $211,810.00 which Lumus has been unable to repay.

4.2. Since Lumus has ceased operations, my primary income has come from consulting services that I offer to a few construction contractors and energy firms. Of this income, 15% of my salary has been attached by the Treasury Department to repay Lumus obligations. My current salary is nowhere near the reasonable salary that I took as President of Lumus. Over the past five years, I have seen a reduction in salary of approximately $500,000.00.

5. Summary

5.1. In 2009, when Lumus first got involved with Sinovel, there was no way to have been able to predict the wake of destruction that Lumus' involvement with Sinovel would cause. While many of the impacts in this statement are not a direct result of Sinovel's crime of stealing intellectual property, the actions taken by the Department of Justice have made it impossible for Lumus to receive restitution directly from Sinovel.

5.2. All of the damages included in this statement are listed in the amounts at the time the damages occurred. They do not include interest and penalties that have accrued since this time, which is likely close to an additional $1MM. Lumus' total damages, exclusive of interest and penalties are as follows:

| Issue | Amount |
|---|---|
| Charlestown Wind Maintenance Issue | 77,879.76 |
| Charlestown Wind Foundation Issue | 705,021.85 |
| Judgment from Bank | 1,351,772.60 |
| Amounts due to Surety | 1,049,332.74 |
| Loan to Lumus | 211,810.00 |
| Estimated Loss of Salary | 500,000.00 |
| **Total** | **3,895,816.95** |

5.3. Solaya's damages are not monetized here but would be a portion of the total damages encountered by Scituate Wind and Fairhaven Wind.

5.4. All of the monetary damages listed here do not take into account the impact to the families of the employees of Lumus and Solaya, or the impact and personal stress for me and my family.

5.5. The monetary damages listed here also do not take into account my loss of reputation which is not quantifiable, but has definitely impacted my relationships in the construction industry and have been a source of branding by wind turbine opposition groups.